UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80112-Civ-Hurley/Vituanc

LAFARGE NORTH AMERICA, INC.,
a Maryland corporation,

    Plaintiff,

vs.

MATRACO-COLORADO, INC., a
Florida corporation, and JOHN F.
WALKER, a natural person,

    Defendants.
_____/



FILED by _____ D.C.
JUN 19 2008
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER

THIS CAUSE is before the Court on Order Setting Trial Date & Discovery Deadlines, Referring Case to Mediation & Referring Discovery to United States Magistrate Judge (DE 18) from United States District Judge Daniel T.K. Hurley referring, for final disposition, "all pretrial discovery motions filed in this case and all motions that relate directly to these motions" and Notice of Recusal (DE 37) from United States Magistrate Judge James M. Hopkins reassigning this cause to the undersigned. Pending before the Court is Defendants/Counterclaimants' Motion For *In Camera* Inspection And To Compel Production And Supporting Memorandum Of Law (DE 136), filed May 6, 2008. The Court ordered the Plaintiff to produce to the Court the documents identified as 1 - 47 in the Motion (DE 143) on May 8, 2008. The Plaintiff filed a Response (DE 150) on May 16, 2008. The Defendants/Counterclaimants filed a Reply (DE 152) on May 20, 2008. A hearing was held on June 11, 2008. This matter is now ripe for review.

## BACKGROUND

Plaintiff Lafarge North America, Inc. ("Lafarge") has sued Defendants/Counterclaimants Matraco-Colorado, Inc. and John Walker (collectively "Walker") for the return of mining equipment bought while the parties' were contemplating a potential business venture in Haiti (DE 1). On May 8, 2008, United States District Judge Daniel T. K. Hurley granted partial summary judgment on some of Walker's counterclaims (DE 168).[1] Specifically, the Court granted Lafarge summary judgment on Walker's breach of oral contract-joint venture claim after finding that the alleged oral agreement failed for lack of showing an intent for the parties to be bound, especially in light of the parties' clear expression of an intent not to be bound in their letter of intent and term sheet. Without a joint venture agreement, the Court held that Lafarge was entitled to summary judgment on Walker's claims for breach of covenant of good faith and fair dealing, and breach of fiduciary duty. The Court also granted Lafarge summary judgment on Walker's claim of fraudulent misrepresentation and equitable claims based on promissory estoppel, unjust enrichment, and quantum meruit after finding these claims defeated by the parties' express agreement.

As to Walker's claims for breach of the Confidentiality Agreement, violation of the Florida Trade Secrets Act, and conversion of confidential information/property, the Court found disputed issues of material fact as to whether the information at issue qualifies as protected "trade secrets" or "confidential information." The Court also found disputed issues of material fact concerning the existence of a valid "exclusivity agreement," which precluded summary judgment on Walker's tortious interference with contract claim.

---

[1] Walker filed a Motion for Reconsideration of the Court's partial summary judgment order (DE 176) on June 12, 2008. If Walker's Motion for Reconsideration is successful, this Court recognizes that certain findings and determinations in this order may need to be re-visited.

2

## PARTIES' CONTENTIONS

During discovery, Lafarge produced two privilege logs identifying over 7,750 pages of documents withheld on the basis of attorney-client and work product privileges (DE 136-2). The privilege logs describe each document withheld, and includes each document's assigned Bates number, date, author(s), recipient(s), and general contents. Walker argues Lafarge may be withholding relevant and important documents based on overly-broad claims of attorney-client and work product privileges. Accordingly, Walker requested an *in camera* review of the 47 documents, primarily e-mail communications, listed on Exhibit C of the Motion (DE 136-5).

Walker argues that most of the 47 documents appear to be business communications between Lafarge's in-house counsel, Timothy Power ("Power"), and non-attorney Lafarge representatives involved with the Haiti project. Walker asserts that such documents are being improperly withheld in a wholesale and rote manner merely because they were copied to Power or because Power participated in the communications. Based on Power's dual titles of "Associate General Counsel" and "Vice President," Walker contends that Lafarge bears the burden of proving that Power was giving primarily legal, and not business, advice in the communications deemed attorney-client privileged. Walker further contends that the privilege log descriptions, including the additional descriptions provided in Lafarge's Response, are overly vague making it impossible to determine if each document is indeed privileged. Walker asserts that even if certain documents contain some privileged information, such information should be redacted and any non-privileged information produced. Walker argues that Lafarge has failed to prove the applicability of the work product doctrine because the documents appear to have been prepared in the ordinary course of business rather than in anticipation of litigation.

Lafarge argues that because the motion was filed over 30 days after service of the second privilege log and after the April 11, 2008 close of discovery, it is untimely and, thus, that Walker has

3

waived any objection to privilege claims under Local Rule 26.1(H)(1).[2] Lafarge argues that an *in camera* review is improper because its privilege log entries give no indication that its attorney-client privilege assertions are false or improper. Lafarge submitted a declaration signed by Power averring that his primary role at Lafarge is to render legal advice, that he routinely receives communications with updates on Lafarge business matters for the sole reason of apprising him of facts to assist him in rendering legal advice, and that his "Vice President" title merely recognizes his seniority level within Lafarge but confers no non-legal corporate duties upon him. Lafarge also emphasizes that it has properly claimed work product protection over 10 of the 47 documents.

## JUNE 11, 2008 HEARING

Counsel for both parties appeared before the Court on June 11, 2008. Upon inquiry by the Court, Walker's counsel asserted that the documents relating to counterclaims resolved by summary judgment are still relevant in that they may reflect the parties' intent to be bound, which may constitute newly discovered evidence for the Court to re-consider its entry of partial summary judgment. Further, Walker's counsel maintained that the privilege log entries reveal that the 47 documents withheld appear to relate to the rendering of primarily business advice that is not entitled to attorney-client privilege protection. As examples, Walker's counsel specifically directed this Court's attention to the entries for documents 21 (LPL02647), 22 (LPL02770-02781) and 46 (LPL06631-06633).

---

[2] The Court finds this argument unpersuasive. Local Rule 26.1(H)(1) requires that all discovery motions be filed within 30 days of the occurrence of grounds for the motion unless a movant shows "reasonable cause for a later filing." Here, Walker filed the Motion within 38 days of service of the second privilege log. This Court finds eight days past the 30 day period contemplated by Local Rule 26.1(H)(1) to be reasonable considering that in the time immediately following receipt of the second privilege log, Walker was preparing for the hearing on Lafarge's summary judgment motion, responding to Lafarge's numerous motions *in limine*, and preparing successful motions to compel production in this case. Such circumstances constitute reasonable cause for the delay.

4

Thereafter, the Court excused Walker's counsel and held an *ex parte* hearing with Lafarge to discuss the factual content of the 47 documents to aid the Court in determining the propriety of Lafarge's privilege assertions. During this portion of the hearing, Lafarge adamantly maintained that Power's only role within Lafarge is to render legal advice regarding corporate affairs. Lafarge relied upon Power's declaration as support for this assertion. Lafarge claimed that it withheld 7,750 out of 70,000 documents produced in good faith and based on careful and proper assertions of privilege as indicated in the log entries. Lafarge argued that, despite Walker's assertions to the contrary, the documents at issue reveal no communications relating to any purported side deals involving Walker and without Walker's knowledge. Thus, Lafarge argued, Walker's contentions that Lafarge is improperly claiming privilege over the 47 documents in an effort to conceal information related to purported side deals regarding Walker are without merit. Under such circumstances, Lafarge argued, an *in camera* review is unjustified and an unnecessary expenditure of judicial resources.

Importantly and while no pleading indicated otherwise, it became clear at the hearing that Lafarge had produced a portion of the 47 documents to Walker in previous productions. For instance, in addressing document 46 (LPL06631-06633), which is a marked up copy of unsigned board resolutions containing Power's handwritten notes, Lafarge explained that it had previously turned over an unmarked copy of the unsigned resolutions to Walker and had withheld only the handwritten notes on the basis of attorney-client privilege because they reflected a conversation between Power and his client after this dispute arose. In light of this revelation, the Court ordered Lafarge to re-produce an unmarked version of document 46 (LPL06631-06633) to Walker. As to the remaining 46 documents, the Court advised the parties that it would conduct an *in camera* review to determine the propriety of Lafarge's privilege assertions.

## DISCUSSION

The issues before the Court are the scope of discovery in light of the Court's entry of partial summary judgment, and the applicability of the attorney-client and work product privileges to the remaining relevant Lafarge corporate communications sought by Walker. Without finding that the standard for *in camera* review was satisfied, the Court effectively granted Walker's request for *in camera* review in order to assess the parties' contentions. In hindsight, the Court may not have exercised its discretion to inspect the documents *in camera* since the inspection revealed that the documents are being properly withheld from production for reasons discussed more fully below.

### *Scope of Discovery*

Parties may obtain discovery regarding any non-privileged matter that is relevant, *i.e.* reasonably calculated to lead to the discovery of admissible evidence, to any party's claim or defense. Fed. R. Civ. P. 26(b)(1); Adkins v. Christie, 488 F.3d 1324, 1331(11th Cir. 2007) (district court erred in excessively narrowing the scope of discovery "in light of the highly relevant nature of the materials sought" by a party seeking documents relevant to his discrimination claim). A court may, however, limit discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case...and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

A court may narrow the scope of discovery to those matters that are relevant to the claims that remain following the entry of partial summary judgment. Jenkins v. Campbell, 200 F.R.D. 498, 501 (M.D. Ga. 2001) (while Federal Rule of Civil Procedure 54 permits a court to revise its partial summary judgment any time prior to the entry of final judgment, this rule did not give the plaintiff a license to engage in unproductive discovery on issues no longer relevant to the litigation); see also

Saria v. Massachusetts Mut. Life Ins. Co., 228 F.R.D. 536, (S.D.W. Va. 2005) (order granting plaintiff's motion for summary judgment on liability on one claim and denying defendant insurer's motion for summary judgment rendered irrelevant interrogatories to plaintiff, and plaintiff accordingly was not compelled to answer those interrogatories).

As a threshold matter, the Court has found that 13 of the 47 documents withheld are duplicative. Specifically, documents 16 (LPL02204-02213), 17 (LPL 02234-02235), 30 (LPL 04954), 33 (LPL05207), 34 (LPL05214-05221), 35 (LPL05458-05459), 36 (LPL05488-05491), 39 (LPL05666), 40 (LPL05707), 42 (LPL05721, LPL05728), 43 (LPL05733), 44 (LPL06330), and 47 (LPL07366) consist entirely of communications that are duplicative of communications in other of the requested 47 documents. Moreover, 8 of the remaining 34 documents contain portions of communications that are duplicative of communications in other of the 47 documents. Against this backdrop, the Court will assess the relevance of the non-duplicative communications contained in 34 of the 47 documents.

The claims that remain to be tried or otherwise adjudicated following the Court's partial summary judgment order are Lafarge's claims for conversion, unjust enrichment, and declaratory judgment and Walker's counterclaims for breach of confidentiality agreement, violation of Florida's Uniform Trade Secrets Act, conversion of confidential information/property, tortious interference with contract, and money owed on an account. Thus, some of the documents are irrelevant to the remaining issues before the Court. For instance, the third category of documents as set forth in the instant motion purports to cover "pre-suit communications about the Term Sheet and alleged joint venture." The Court's *in camera* review confirms that documents 1 (LPL00003-00012), 2 (LPL00013), 5 (LPL00216-00217), 11 (LPL00684), 19 (02301-02302), 29 (LPL03690-03698), and

38 (LPL05660) fit this category of information. Since the information in these documents concerns Walker's breach of oral contract/joint venture agreement claim, a claim decided unfavorably against Walker in the partial summary judgment, these documents are irrelevant and Lafarge accordingly is not compelled to produce them. Being bound by the partial summary judgment order, this Court declines to entertain Walker's argument that these documents are relevant in that they may reflect newly discovered evidence of the parties' intent to be bound, particularly in light of the Court's express finding that any "subsequent dealings between the parties – including the numerous oral communications...and Lafarge's frequent reference to Walker/Matraco as its 'partner' in Haiti – do not...permit an agreement to be inferred from the surrounding circumstances" (DE 168).

In addition, portions of some of the communications within the documents are entirely irrelevant. For instance, documents 3, (LPL00169), 6 (LPL00573), 8 (LPL00668), 9 (LPL00671), 15 (LPL02065), 24 (LPL03086), and 28 (LPL03685), which are all chains of e-mails, contain non-privileged communications regarding meeting dates and times and similar miscellaneous matters. These same e-mail chains also contain privileged communications, which will be addressed in the next section. To the extent documents contain communications that are entirely irrelevant to the claims at issue, however, Lafarge will not be compelled to produce them.

Document 25 (LPL03087) is an email from Power to two non-attorney Lafarge representatives discussing the payment of outside counsel's invoices. While this communication is clearly not privileged,[3] it is irrelevant in the context of this litigation, and is thus not subject to compelled production.

---

[3] See U.S. v. Leventhal, 961 F.2d 936, 940 (11th Cir. 1992) (information regarding attorney's fees is not attorney-client privileged unless its disclosure would reveal other privileged information, such as trial strategy or the nature of legal services performed).

8

### *Privileged Corporate Communications*

After having determined the proper scope of discovery, the Court reviewed the documents *in camera* to assess whether the relevant communications involving Lafarge's in-house counsel and non-attorney representatives, which purport to contain primarily business advice, are attorney-client or work product privileged. A "party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential." Bogle v. McClure, 332 F.3d 1347, 1358 (11th Cir. 2003) (quoting U.S. v. Schaltenbrand, 930 F.2d 1554, 1562 (11th Cir. 1991)). Corporations, acting through their employees, are entitled to the attorney-client privilege for in-house counsel. U.S. v. Lockheed Martin Corp., 995 F. Supp. 1460, 1464 (M.D. Fla. 1998); see also Upjohn Co. v. United States, 449 U.S. 383, 394-95 (1981) (accepting principle that in-house counsel should be entitled to same attorney-client privilege as other lawyers). A client claiming the privilege must establish that the communications occurred in connection with the rendition of legal, not business, advice, were between an attorney and the client, and were intended to be, and were in fact, made in confidence. Lockheed, 995 F. Supp. at 1464; Kaiser Aluminum & Chem. Corp. v. Phosphate Eng'g & Const. Co., Inc., 153 F.R.D. 686, 688 (M.D. Fla. 1994) (interoffice memoranda between corporation's president and engineer was not protected by attorney/client privilege and subject to discovery because document was merely internal communication between co-workers and not a communication between attorney and client).

In addition to the attorney-client privilege, protection is afforded to attorney work product. Materials prepared by a party's representative, including his or her designated agent, to aid in anticipated or pending litigation will be protected from disclosure unless the party seeking discovery shows substantial need for the materials and cannot acquire a substantial equivalent without undue

hardship. Hickman v. Taylor, 329 U.S. 495, 511 (1947); Fed. R. Civ. P. 26(b)(3)(A); Lockheed, 995 F. Supp. at 1464-65 (concluding that an auditor's report and memorandum was intended to advise in-house counsel on legal issues at a time when litigation was certainly contemplated and, thus, was protected work product). It protects the ideas, legal theories, opinions and mental impressions of attorneys formulated in connection with preparation for trial. Hickman v. Taylor, 329 U.S. at 511; Fed. R. Civ. P. 26(b)(3)(A). For the work product doctrine to apply, a party "must show that the documents were prepared for litigation purposes and not merely in the ordinary course of business." St. Joe Co. v. Liberty Mutual Ins. Co., 2006 WL 3391208 at *8 (M.D. Fla. Nov. 22, 2006) (holding that a defendant insurance company failed to provide evidentiary proof of objective facts, via affidavits or deposition testimony, that reasonable anticipation of litigation existed at the time the documents were produced or that the documents were prepared for the purpose of litigation).

Here, communications to or from Power for the express purpose of securing or giving legal advice or assistance are entitled to attorney-client privilege protection. Documents 3 (LPL00171), 4 (LPL00176-00180), 7 (LPL00635), 8 (LPL00668-00669), 9 (LPL00672-00681), 10 (LPL00682-00683), 14 (LPL01338-01340, LPL01347-01348), 18 (LPL02262-02290), 20 (LPL02478-02483), 22 (LPL02770, 02777-02781), 24 (LPL03086), 26 (LPL07591), 27 (LNA50015(Redacted)), 31 (LPL04959-04960), 37 (LPL05492), and 45 (LPL00618-06621) all contain legal advice rendered by Power and/or constitute an exchange of information necessary to formulate or evaluate legal advice, and are therefore protected. Document 23 (LPL02782) is an e-mail between non-attorney Lafarge representatives, however it includes an attorney-client privileged e-mail forward with Power's analysis of issues and request for follow-up information. Thus, the responsive e-mail communication is likewise privileged.

Additionally, documents 21 (LPL02647) and 32 (LPL04988-04989) are communications between Power and Lafarge representatives contemplating the need to prepare for potential litigation. Document 32 (LPL04988-04989) contains clear indicia of Power's legal strategy and mental impressions. Both are protected by the work product privilege.

The Court's *in camera* inspection reveals that some documents qualify for protection under both the attorney client privilege and the work product doctrine. For instance, document 12 (LPL00740-00742) is a communication between Power and a Lafarge representative regarding a potential FAA statement that is clearly protected work product, but it also contains an additional communication between the parties regarding Walker. While the additional communication is not protected work product, it clearly falls within the ambit of attorney-client privileged communications. Similarly, documents 4 (LPL00176-00180) and 13 (LPL00772) are attorney-client and work product privileged e-mail communications relaying information in anticipation of potential litigation and include Power's mental impressions and legal theories.

In contrast, document 15 is an e-mail among Lafarge's non-attorney representatives and in-house counsel with the purpose of setting up a conference call to discuss an appropriate tax structure for the Haiti investment. Lafarge has claimed both attorney-client and work product protection over this document. It appears, however, that this document was prepared in the ordinary course of business, rather than in anticipation of any litigation. Furthermore, it does not appear to have been made in confidence for the express purpose of securing legal advice. Hence, this document is not entitled to privileged status. Similarly, document 41 (LPL05708-05709) is an e-mail communication solely between non-attorney Lafarge representatives regarding equipment-related issues. In its Response, Lafarge acknowledged that it erroneously included document 41

11

(LPL05708-05709) in its privilege log and had since turned it over to Walker.

Based on the foregoing and upon due consideration of the Motion, it is hereby

ORDERED that Defendants/Counterclaimants' Motion For *In Camera* Inspection And To Compel Production (DE 136), filed May 6, 2008, is GRANTED IN PART and DENIED IN PART. Based on the Court's *in camera* inspection of the documents, Lafarge is ORDERED to produce documents 15 (LPL02065) and re-produce document 41 (LPL05708-05709) to the Defendants within seven (7) days of the entry of this Order.

DONE and ORDERED in Chambers at West Palm Beach in the Southern District of Florida, this __19__ day of June, 2008.

                                                                          ANN E. VITUNAC
                                                                          United States Magistrate Judge

Copies to:
All counsel of record